### UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

**SAMUEL OMORODION**                                    **CIVIL ACTION**

**VERSUS**

**KRISTI NOEM, ET AL.**                          **NO. 26-00072-BAJ-SDJ**

### RULING AND ORDER

Before the Court is Petitioner Samuel Omorodion's **Petition for Writ of Habeas Corpus** pursuant to 28 U.S.C. § 2241. (Doc. 1). Respondents filed a Response to the Petition. (Doc. 18). Petitioner filed a Reply Brief. (Doc. 19).

Petitioner Samuel Omorodion has been in the custody of U.S. Immigration and Customs Enforcement ("ICE") since his re-detention on June 9, 2025, 14 months ago. (Doc. 18-1 ¶ 16). ICE previously detained Omorodion for a period of 17 additional months, from August 2, 2023 to January 23, 2025. (*Id.* ¶¶ 12, 15). Because Omorodion's re-detention was unlawful at its inception, and because his detention has been unconstitutionally prolonged, the Court finds that he is entitled to habeas relief and immediate release from ICE custody. For the following reasons, the Petition will be **GRANTED**.

## I.    BACKGROUND

Omorodion is a 40-year-old citizen of Nigeria who lawfully arrived in the United States on an A-2 Visa in 2015.[1] (Doc. 23-3 at 11). He is the father of two young children, both of whom are U.S. citizens, and has a fiancé in Maryland, where he has lived since 2015.[2] (Doc. 1-4).

On July 27, 2023, the U.S. State Department sent a letter to the Department of Homeland Security ("DHS"), informing DHS that Omorodion overstayed his A-2 Visa after it expired on September 15, 2015. (AFOD Fruge-Prudhome Decl., Doc. 18-1 ¶ 11; Doc. 23-5 at 4).

On August 2, 2023, ICE arrested Omorodion and placed him into removal proceedings. (Doc. 18-1 ¶ 12). As noted, Omorodion's initial detention lasted a total of 17 months—from August 2, 2023 to January 23, 2025. (*Id.* ¶¶ 12, 15; Doc. 23-2 at 10, 11).

On April 24, 2024, the Immigration Court ordered Omorodion removed to Nigeria but granted Petitioner deferral of removal under the Convention Against

---

[1] According to the U.S. Department of State, A-2 visa holders include "[d]iplomats and other foreign government officials traveling to the United States to engage solely in official duties or activities on behalf of their national government." Additionally, "[i]mmediate family members of diplomats and government officials receive A-1 or A-2 visas, with few exceptions." TRAVEL.STATE.GOV, *Visas for Diplomats and Foreign Government Officials* https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html (last visited Aug. 3, 2026).

[2] On December 6, 2019, Petitioner was convicted of rape second degree and received a sentence of 20 years imprisonment with 15 years suspended and 5 years of supervised probation. (Doc. 18-1 ¶ 8). On the same date, Petitioner was also convicted of sex offense third degree and received a sentence of 10 years imprisonment with all 10 years suspended, and 5 years of supervised probation. (*Id.*).

Torture ("CAT").[3] (Doc. 1-2; Doc. 23-3 at 65–77). Specifically, the Immigration Court found it "'more likely than not' that [Omorodion] would be tortured by, at the instigation of, or with the consent or acquiescence of authorities if he is returned to Nigeria." (Doc. 23-3 at 77). DHS appealed the Immigration Court's decision to the Board of Immigration Appeals ("BIA"). (Doc. 23-1 at 14).

On October 25, 2024, the BIA affirmed the Immigration Court's decision and dismissed DHS's appeal. (Doc. 23-1 at 16; Doc. 23-1 at 13–17; Doc. 18-1 ¶ 13). The BIA emphasized:

> DHS has neither established clear error in the Immigration Judge's credibility finding nor identified other legal or factual errors in her decision. [] Accordingly, [the BIA] affirm[s] the Immigration Judge's determination that [Omorodion] demonstrated it is more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity in Nigeria.

(Doc. 23-1 at 16).

After the BIA's October 2024 Decision, ICE nevertheless continued to detain Omorodion, informing him they were "trying to see if Canada, Ghana, Niger, Cameroon, England, Fance, Spain, [or] Germany would accept [him]" for third country removal. (Pet. Decl., Doc. 1-4 at 3). Despite ICE's alleged efforts, Omorodion asserts that ICE never asked him to sign travel document requests for these countries

---

[3] Deferral of removal under CAT is available for a noncitizen who establishes "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007) (quoting 8 C.F.R. § 1208.16(c)(2)). When a noncitizen is granted relief under CAT, a removal order is entered against the noncitizen, but "notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country." *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020).

or any other countries during his detention, which is supported by his A-File. (Doc. 1-4; Doc. 23-5 at 73).

On January 23, 2025, ICE released Omorodion on an Order of Supervision ("OSUP") because ICE was unable to "effect[ his] deportation or removal during the period prescribed by law." (Doc. 23-8 at 11). In the months that followed, ICE took no action to pursue Omorodion's removal. (Doc. 18-1 ¶¶ 15–16).

Then, on June 9, 2025, during a routine check-in, ICE re-detained Omorodion, despite having made no progress towards Omorodion's removal. (*Id.* ¶ 16). Now, ICE has detained Omorodion for 14 additional months, for a total of 31 months, and ICE has, again, made no progress towards effectuating Omorodion's removal. (*Id.* ¶¶ 16–21).

Despite ICE's complete inaction during the four and a half months Omorodion was released from ICE custody, Assistant Field Office Director ("AFOD") Lisa Fruge-Prudhome claims that Omorodion "was arrested by ERO Baltimore for purposes of third country removal." (*Id.* ¶16). The Notice of Revocation of Release provided to Omorodion on June 9, 2025 provided a similar cursory explanation:

### Notice of Revocation of Release

This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.

ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On 10/25/2024, you were ordered removed to Nigeria by an authorized U.S. DHS/DOJ official and granted CAT/Withholding. You are subject to an administratively final order of removal. Your case is under current review by France, United Kingdom, Italy, and Spain for the issuance of a travel document.

4

(Doc. 23 at 5). ICE's own records, however, show that there was no change in ICE's ability to remove Omorodion to a third country between his release on January 23, 2025, and his re-detention on June 9, 2025. Nor does the Government allege that Omorodion failed to comply with the conditions of his OSUP. (Doc. 18).

According to Omorodion, ICE agents verbally explained to him that ICE was re-detaining him "because of the new administration."[4] (Doc. 1-4 at 4). ICE does not refute Omorodion's assertion. (Doc. 18). On these facts, habeas relief must be granted.

## II.    DISCUSSION

This Court has explained the applicable law in detail in *Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779 (M.D. La. 2026), which the Court incorporates by reference herein.

Here, Petitioner argues that his release from ICE detention is warranted for two reasons: (1) his re-detention was unlawful at its inception because ICE re-detained him without changed circumstances; and (2) his re-detention has been prolonged in violation of 8 U.S.C. § 1231(a)(6) and the presumptively reasonable

---

[4] Other courts have acknowledged similar reports from petitioners in ICE custody. *See, e.g., Garcia-Aleman v. Thompson*, No. 25-cv-886, 2025 WL 3534806, at *3 (W.D. Tex. Nov. 24, 2025) (W.D. Tex. Dec. 9, 2025) ("[W]hen ICE re-detained Petitioner, the only explanation given was that 'because there was a new administration, their hands were basically tied.'"); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (ICE re-detained Villanueva "due to the current administration's renewed emphasis on removing criminal aliens."); *Shuhaibar v. Semaia*, No. 25-cv-3399, 2025 WL 4231572, at *4 (C.D. Cal. Dec. 17, 2025) ("Rather, upon being re-detained, ICE merely informed Petitioner he was being detained because 'it's a new administration.'"); *Khoury v. Noem*, -- F. Supp. 3d - - , 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) ("[A]ccording to Petitioner's verified allegations, an ICE officer told him that he was being re-detained 'due to the new administration' . . . .").

period of detention established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In response, the Government argues that "because ICE has and is continuing to take steps toward removing Petitioner to a third country, there is a significant likelihood of his removal in the reasonably foreseeable future." (Doc. 18 at 9–10). However, no evidence in support of this assertion has been offered by the Government.

For the following reasons, the Petition will be **GRANTED**.

### A. Unconstitutional Re-Detention Absent Changed Circumstances.

Noncitizens have an "overwhelming liberty interest in their continued release," under an Order of Supervision. *Rodriguez Romero*, 827 F. Supp. 3d at 801. "Should ICE disregard its own procedures when revoking a noncitizen's release," that person is deprived of liberty "without due process. Thus, the Fifth Amendment to the United States Constitution is violated and the profound remedy of habeas corpus is warranted." *Omar v. U.S. ICE*, 2026 WL 1663009, at *5 (M.D. La. May 29, 2026).

Once ICE has released a noncitizen on an OSUP because there is no significant likelihood of removal in the reasonably foreseeable future, ICE may revoke the noncitizen's supervised release in the following circumstances: (1) if the noncitizen violates conditions of release; or (2) "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i).

6

Here, Respondents do not argue that Omorodion violated the conditions of release contained in his OSUP. (*See generally* Doc. 18). Instead, the Government asserts that ICE revoked Omorodion's OSUP on June 9, 2025 "for purposes of third country removal." (Doc. 18-1 at 2).[5]

Critically, the "changed circumstances that make a noncitizen's removal likely in the foreseeable future must have existed at or before the OSUP revocation; post-hoc justifications are inadequate." *Omar,* 2026 WL 1663009, at *7. Thus, "[b]efore revoking an OSUP[,]" ICE must make the determination that removal "has become significantly likely" and "ICE must make that determination in the first instance, rather than the Court." *Munagi v. McDonald,* 813 F. Supp. 3d 225, 228 (D. Mass. 2025). This requires an individualized assessment—not vague statements and generalizations. *See Rodriguez Romero,* 827 F. Supp. 3d at 792; *Roble v. Bondi,* 803 F. Supp. 3d 766, 771–72 (D. Minn. 2025) (rejecting Government's alleged change in circumstances as proffered change was "not individualized to Roble; in fact, it applies to any noncitizen [re-]detained under 8 C.F.R. § 241.13(i)(2)"). Contrary to the Government's position, it is ICE who bears the burden of showing changed circumstances—not the noncitizen. *See Rodriguez Romero,* 827 F. Supp. 3d at 792.[6]

---

[5] This representation is consistent with the Notice of Revocation, which provided: "[B]ased on a review of your official alien file and a determination that there are changed circumstances in your case[,] ICE has determined that you can be expeditiously removed." (Doc. 23 at 5).

[6] While Omorodion has the ultimate burden of proving his entitlement to habeas relief, *see Walker v. Johnston,* 312 U.S. 275, 286 (1941), the applicable regulations "place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future," *Roble v. Bondi,* 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (citing 8 C.F.R. § 241.4 and § 241.13); *see also Hernandez Escalante v. Noem,* No. 25-cv-182,

As explained in the Background section, *supra*, ICE released Omorodion in January of 2025 after 17 months of detention because ICE could not effectuate his removal. Between January and June of 2025, ICE took no action to pursue Omorodion's removal. When ICE arrested him again in June 2025, no changed circumstances existed making Omorodion's removal reasonably foreseeable.[7] The lack of changed circumstances on June 9, 2025, is underscored by the fact that Omorodion remains detained today, 14 months after his re-detention, and following 17 months of prior ICE detention, with no end in sight.[8]

The irrefutable record shows that ICE re-detained Omorodion without any plan to effectuate his removal. Therefore, at its inception, Omorodion's re-detention was unmoored from any legitimate purpose and was an unconstitutional deprivation of liberty. As such, Omorodion is entitled to habeas relief.

---

2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervis[ion] . . . . The[ ] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed.").

[7] The A-File confirms that despite the agency's assertions, ICE had not even sent the accompanying travel document requests to any other nation when it arrested Omorodion on June 9, 2025. And incredibly, each of those travel document requests remained incomplete and unsigned in Omorodion's A-File when it was later produced in this litigation on March 30, 2026—over 9 months into his re-detention. (Doc. 23-3 at 1-8).

[8] In recent filings (Doc. 26; Doc. 27), Omorodion claims that he was told by a deportation officer in May of 2026 that Ghana will accept him for third country removal and "specifically mentioned a withdrawal [of] his [habeas] Petition would allow him to be sent to Ghana without delay." (Doc. 27 at 1). This allegation is completely unsupported by the administrative records contained in the A-File. Further, the Government has not sought relief from the Amended Standing Order to pursue removal to Ghana. And there are no travel documents or evidence of a removal plan in the record, which are required by the Court's Amended Standing Order. Therefore, the Court does not address the issue of third-country removal to Ghana.

**B. Unconstitutionally Prolonged Detention.**

Omorodion is also entitled to habeas relief because his detention has been unconstitutionally prolonged. In *Zadvydas*, the Supreme Court authorized detention only for "a period reasonably necessary to bring about [a] [noncitizen]'s removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). The *Zadvydas* Court found 6 months to be the outer limits in terms of a presumptively reasonable period of post-removal order detention. Here, between his initial and current detention, Omorion has spent 31 months in immigration detention. *See Rodriguez Romero*, 827 F. Supp. 3d at 803 (finding the *Zadvydas* period is cumulative and collecting cases). Nearly 17 of those months have been spent in post-removal order detention. This is exceedingly beyond the 6-month period the *Zadvydas* Court found presumptively reasonable.

In bringing a *Zadvydas* claim of prolonged detention, once a petitioner has shown that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must show evidence sufficient to rebut the petitioner's showing, or else petitioner's detention is deemed unlawful. *Zadvydas*, 533 U.S. at 701.

As noted, the record shows that Omorodion's removal is no more likely today than it was the day his removal order was entered. The diplomatic barrier that existed at the time of his initial detention—CAT protection—still exists today. Beyond that, the Government's own Declarant, AFOD Lisa Fruge-Prudhome, establishes that ICE has made no progress towards removal:

9

> On January 12, 2026, ERO New Orleans followed up with ICE's headquarters component about ongoing efforts to remove Petitioner to a Third Country. . . . ICE continues to work to process Petitioner for removal to a third country.

(Doc. 11-1 at 3). A single follow-up with headquarters after 6 months in ICE detention falls woefully short to justify the Government's deprivation of Omorodion's liberty. *See Roble*, 803 F. Supp. 3d at 773 ("The Government asserts, however, that on August 11, 2025, ICE 'requested third country removal assistance from [Enforcement and Removal Operations] HQ.' That is the only argument the Government makes for changed circumstances, and it falls woefully short. The bare fact that ICE officials in St. Paul have requested third-country removal assistance from ICE headquarters tells the Court nothing . . . ."). The Government has seemingly made no progress towards removal, despite re-detaining Omorodion 14 months ago. *See Douglas v. Baker*, 812 F. Supp. 3d 525, 532 (D. Maryland Oct. 24, 2025) ("[T]he deference baked into the *Zadvydas* standard does not permit the [G]overnment to detain a noncitizen and then sit on its hands. Such inaction, or lack of progress in effectuating removal, is precisely what *Zadvydas* forbids.").

Omorodion's detention well exceeds the presumptively reasonable period provided in *Zadvydas*, and he is entitled to habeas relief and immediate release.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Petitioner Samuel Omorodion's **Petition for Writ of Habeas Corpus (Doc. 1)** is **GRANTED**.

10

**IT IS FURTHER ORDERED** that ICE shall release Omorodion from ICE custody within 24 hours of the issuance of this Ruling and Order.

**IT IS FURTHER ORDERED** that ICE shall notify Omorodion's counsel of the exact date, time and place of Omorodion's release at least 4 hours prior to his release.

**IT IS FURTHER ORDERED** that ICE shall return Omorodion's personal belongings and identifying documents to him.

**IT IS FURTHER ORDERED** that ICE will release Omorodion under the same conditions of supervision provided in his January 2025 Order of Supervision. ICE shall supply Omorodion with a physical copy of his Order of Supervision and any other relevant documentation.

**IT IS FURTHER ORDERED** that ICE will not re-detain Omorodion without due process of law, in compliance with all applicable regulations, and in accordance with this Ruling and Order.

**IT IS FURTHER ORDERED** that Omorodion's **Motion for Temporary Restraining Order (Doc. 2)** is **TERMINATED AS MOOT**.

**IT IS FURTHER ORDERED** that Omorodion's **Motion for Oral Argument (Doc. 27)** is **TERMINATED AS MOOT**.

Baton Rouge, Louisiana, this 11th day of August, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

11